# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00283-CR
## NO. 03-10-00284-CR

**John Richard Shelby, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT
### NOS. CR-09-0128 & CR-09-0151, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted John Richard Shelby of one count of aggravated assault of a public servant, two counts of intoxication assault, and two counts of failure to stop and render aid. *See* Tex. Penal Code §§ 22.02, 49.07; Tex. Transp. Code § 550.021. All counts arose from a single incident in which Shelby, intoxicated, drove his truck into a state trooper's vehicle that was parked on the shoulder of the highway. The collision injured the trooper and a motorist he had pulled over. Shelby fled the scene. The jury assessed punishment at fourteen years' incarceration for the aggravated-assault charge and five years' incarceration for each remaining charge. *See* Tex. Penal Code §§ 12.32, 12.33; Tex. Transp. Code. § 550.021(c)(1). The trial court ordered all sentences to run concurrently. Shelby appeals, arguing that (1) his convictions for both aggravated assault of a public servant and intoxication assault of the trooper violate the prohibition against double jeopardy; (2) the evidence was legally insufficient to prove the intoxication assault offenses; (3) the trial court

erred by admitting evidence of Shelby's extraneous offenses; and (4) the trial court erred by admitting opinion testimony from the injured trooper regarding Shelby's sentencing. For the following reasons, we overrule Shelby's points of error and affirm the judgments of conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

The evidence showed that on September 24, 2008, Shelby was driving on Interstate Highway 35 in Kyle, Texas with two other men in his truck: Frank Lopez, who was Shelby's boyfriend, and Reynaldo Hernandez, who was Lopez's friend. The three men had consumed alcoholic beverages in the preceding hours. During the drive, Shelby and Lopez began arguing, and Shelby began hitting Lopez repeatedly. At some point, Shelby's truck veered across several lanes of traffic, where it collided with the parked patrol car of State Trooper Steve Hoppas. Hoppas had parked his patrol car on the right shoulder of the highway after pulling over motorist Kurt Pavia, and Pavia was standing next to Hoppas's patrol car when Shelby's truck hit it. The collision propelled Hoppas's patrol car into Pavia, injuring him. Hoppas, sitting in the back of his patrol vehicle writing out a traffic ticket, also suffered extensive injuries from the collision.

Two motorists who were driving behind Shelby testified that they saw his truck veer into the patrol car but did not see Shelby drive erratically before that. Passenger Hernandez testified that Shelby's hands were on the steering wheel immediately before the collision. Passenger Lopez testified that he did not see the events preceding the collision because he was covering his face to protect it from Shelby's blows. In a post-arrest interrogation, the video recording and transcript of which were introduced into evidence, Shelby claimed that Lopez had caused the collision by jerking the steering wheel of his truck.

2

After the collision, and before help arrived, Shelby drove away from the scene. A short time later police found him in a nearby parking lot. State Trooper Antonio Leal arrested Shelby and transported him to a hospital. Leal testified that at the time he transported Shelby to the hospital Shelby smelled strongly of alcohol and had difficulty maintaining his balance. At the hospital, Leal administered the horizontal gaze nystagmus (HGN) field sobriety test to Shelby, and Shelby tested positive for six out of six possible indicators of intoxication. A subsequent blood test revealed that Shelby's blood alcohol concentration (BAC) was 0.13, which is above the legal threshold for intoxication. *See* Tex. Penal Code § 49.01(2)(B) (legal threshold for intoxication is BAC of 0.08). A State toxicology expert testified that Shelby's BAC would have possibly been somewhat higher than 0.13 at the time of the accident.

The State charged Shelby in a three-count indictment with aggravated assault of a public servant, intoxication assault, and failure to stop and render aid in connection with Trooper Hoppas, and in a two-count indictment with intoxication assault and failure to stop and render aid in connection with Pavia. A jury convicted Shelby on all five counts. Shelby appeals.

## DISCUSSION

Shelby raises six points of error: one asserting a double jeopardy violation, two challenging the sufficiency of the evidence for his intoxication assault convictions, two complaining about the admission of extraneous offenses during the guilt-innocence phase, and one complaining about the admission of testimony in the punishment phase.

## Double Jeopardy

In his first point of error, Shelby argues that his convictions for aggravated assault of a public servant and intoxication assault against Trooper Hoppas resulted in multiple punishments for the same conduct in violation of the prohibition against double jeopardy.

Shelby raises his double jeopardy claim for the first time on appeal. Generally, a defendant bears the burden of preserving a double jeopardy objection at or before the time the issue of his guilt is submitted to the finder of fact. *Gonzalez v. State*, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000). However, because of the fundamental nature of double jeopardy protections, an appellant is excused from the preservation requirement if (1) the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record, and (2) enforcement of the usual rules of procedural default serves no legitimate state interest. *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006) (citing *Gonzalez*, 8 S.W.3d at 643).

Because it is undisputed that Shelby's convictions are based on the same conduct, if there is a double jeopardy violation, it is apparent on the face of the record. *See McCrary v. State*, 327 S.W.3d 165, 171 (Tex. App.—Texarkana 2010, no pet.); *Johnson v. State*, 208 S.W.3d 478, 510 (Tex. App.—Austin 2006, no pet.). Further, because both convictions arise out of the same trial, enforcement of the usual rules of procedural default would serve no legitimate state interest. *See Shaffer v. State*, 477 S.W.2d 873, 876 (Tex. Crim. App. 1971) (enforcement of rules of procedural default serve no state interest when "the two convictions were in the same court, on the same day, before the same judge, and were based on the same evidence"); *Johnson*, 208 S.W.3d at 510

4

(because both convictions arose out of same trial, enforcement of usual rules of procedural default would serve no legitimate state interest).

The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V; *see also* Tex. Const. art. I, § 14 ("No person, for the same offense, shall be twice put in jeopardy of life or liberty[.]"). The law recognizes three distinct types of double jeopardy claims: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Langs*, 183 S.W.3d at 685; *see Bigon v. State*, 252 S.W.3d 360, 369 (Tex. Crim. App. 2008). A multiple punishments violation of double jeopardy, which Shelby asserts in this appeal, may arise in two situations: (1) the lesser-included offense context, in which the same conduct is punished twice (once for the basic conduct, and a second time for that same conduct plus more); and (2) punishing the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once. *Langs*, 183 S.W.3d at 685. The ultimate question in the multiple punishment context is whether the legislature intended to impose multiple punishments. *Id.* at 688; *see Missouri v. Hunter*, 459 U.S. 359, 366 (1983) ("With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.").

The traditional means to determine legislative intent is the *Blockburger* "same elements" test. *Gonzales v. State*, 304 S.W.3d 838, 845 (Tex. Crim. App. 2010); *see Blockburger v. United States*, 284 U.S. 299, 304 (1932). When the same conduct violates more than one distinct

5

penal statutory provision and each statute requires proof of a fact that the other does not, it is presumed that the two offenses are not the same and that the legislature intended to authorize multiple punishments. *See Hunter*, 459 U.S. at 366–67; *Blockburger*, 284 U.S. at 304. Conversely, if one offense contains all the elements of the other, it is presumed that the two offenses are the same and that the legislature did not intend to authorize punishment for both. *See Whalen v. United States*, 445 U.S. 684, 693–94 (1980). In Texas, when resolving whether two crimes are the same for double jeopardy purposes, we focus on the statutory elements alleged in the charging instruments applying the cognate-pleadings approach adopted by the court of criminal appeals. *Bigon*, 252 S.W.3d at 370; *see Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007); *see also Hunter*, 459 U.S. at 367–68 (Supreme Court implicitly adopted pleadings approach for evaluating double jeopardy violations).

In this case, the indictment charged Shelby with the offense aggravated assault of a public servant with a deadly weapon in Count I, alleging that Shelby:

> did then and there intentionally, knowingly and recklessly cause bodily injury to Steve Hoppas by striking a motor vehicle occupied by Steve Hoppas with a motor vehicle driven by [Shelby], and [Shelby] did then and there use a deadly weapon, to-wit: a motor vehicle,
>
> And [Shelby] then and there knew that the said Steve Hoppas was a public servant, to-wit: a peace officer and the said offense was committed while Steve Hoppas was lawfully discharging an official duty[.]

The indictment also charged Shelby with the offense of intoxication assault in Count II, which alleged that Shelby:

> did then and there, by accident and mistake, while operating a motor vehicle in a public place while intoxicated, in that [Shelby] did not have the normal use of his

6

mental and physical faculties by reason of the introduction of alcohol, a controlled substance, a dangerous drug, and a combination of those substances into his body and by having an alcohol concentration of 0.08 or more, and by reason of such intoxication, cause serious bodily injury to an individual, namely Steve Hoppas, by causing the motor vehicle driven by [Shelby] to collide with the motor vehicle occupied by the said Steve Hoppas.[1]

When comparing the two offenses as indicted, and taking into account all of the elements that the State must prove for these two charges, the two offenses are not the same under a strict application of the *Blockburger* test because each offense requires proof of a fact that the other does not. As charged here, aggravated assault on a public servant requires proof that Hoppas was a public servant who was lawfully discharging an official duty and that Shelby used a deadly weapon during the commission of the assault, whereas intoxication assault does not require proof of either Hoppas's status as a public servant or Shelby's use of a deadly weapon. In addition, intoxication assault requires proof of "intoxication" and "the operation of a motor vehicle in a public place," while aggravated assault of a public servant does not. Thus, the two offenses for which Shelby was convicted do not involve identical elements; each offense contains distinct elements that the other does not. *See Blockburger*, 284 U.S. at 304.

---

[1] Count II further alleged that Shelby's motor vehicle was "then and there a deadly weapon." However, in this count the deadly weapon is not an element of the offense, but rather functions as a sort of sentencing enhancement mechanism due to its impact on eligibility for community supervision and parole. *See, e.g.*, Tex. Code Crim. Proc. art. 42.12, § 3g(a)(2) (affirmative deadly weapon finding renders defendant ineligible for community supervision); Tex. Gov't Code § 508.145(d)(1) (providing that inmate serving sentence for offense for which judgment contains affirmative deadly weapon finding is not eligible for release until actual calendar time served, without consideration of good conduct time, equals one-half of sentence or 30 calendar years, whichever is less).

However, the *Blockburger* test is only one tool of statutory construction, not the exclusive tool. *Gonzales*, 304 S.W.3d at 845. When multiple punishments arise out of one trial, the *Blockburger* test is the starting point in analyzing whether the two offenses are the same. *Bigon*, 252 S.W.3d at 370. Sameness in the context of multiple punishments for the same offense is purely a matter of legislative intent. *Gonzales*, 304 S.W.3d at 845; *McCrary*, 327 S.W.3d at 173. Even if a straightforward application of the *Blockburger* test would suggest that two offenses are not the "same" for double jeopardy purposes, if other considerations reveal a legislative intent that an accused not be punished for both offenses if they occur in the course of a single transaction, then an accused may not be punished for both offenses. *Gonzales*, 304 S.W.3d at 845–46; *see Ex parte Ervin*, 991 S.W.2d 804, 807 (Tex. Crim. App. 1999).

The State argues that the legislature expressly authorized simultaneous convictions, and therefore multiple punishments, for assault on a public servant and intoxication assault. The State contends that subsection 22.01(g) of the assault statute permits multiple punishments in this case. Section 22.01(g) states: "If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or both sections." Tex. Penal Code § 22.01(g). Because assault on a public servant is an offense under section 22.01(b), the State maintains that subsection (g) permits prosecution for assault on a public servant and intoxication assault. However, Shelby was prosecuted for *aggravated* assault on a public servant under section 22.02. *See* Tex. Penal Code § 22.02(a)(2), (b)(2)(B). Thus the question is whether subsection (g) applies to a prosecution for aggravated assault under section 22.02, which does not have a corresponding subsection. Yet, we need not answer that question here because

8

subsection (g) in the assault statute was enacted in 2009, becoming effective September 1, 2009. Shelby committed the offenses at issue here on September 24, 2008—almost one year before subsection (g) came into effect. The change in the law occurred after the incident serving as the basis for Shelby's convictions. The legislative history of the assault statute reflects that the legislature intended for the 2009 amendments to section 22.01, including the addition of subsection (g), to apply prospectively. *See* Act of April 24, 2009, 81st Leg., R.S., ch. 427, §§ 2–3, 2009 Tex. Gen. Laws 1022, 1023; *see also* Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 1324, 81st Leg., R.S. (2009); House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2066, 81st Leg., R.S. (2009). Thus, the legislature intended to allow multiple prosecutions under the assault statute only for offenses committed after September 1, 2009.

We acknowledge that the court of criminal appeals has held that subsequent enactments by the legislature may be some evidence of the intent in a prior version of the statute. *See Brown v. State*, 943 S.W.2d 35, 40 (Tex. Crim. App. 1997) (finding later version of statute relevant to interpreting earlier version, combined with other factors). However, such changes in the law appear to be most helpful as evidence of the legislative intent regarding the prior law when the amendments seem to be a response to appellate court decisions construing the statute. *Id.* Such is not the case here. The legislative history of the 2009 amendments reflects that the amendments were enacted to address domestic violence strangulation cases. Bill analysis indicates that subsection (g) was enacted to "give prosecutors the discretion to try strangulation cases under the law that carries the most appropriate penalty . . . by stating that if conduct constituting strangulation also constituted another offense, the defendant could be prosecuted under either or both laws." *See* House Comm.

9

on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2066, 81st Leg., R.S. (2009). Thus, we do not find that the subsequent enactment of section 22.01(g) assists us in interpreting the prior law. *See Ervin*, 991 S.W.2d at 816.

For these reasons, we reject the State's argument that a specifically expressed legislative intent allows the multiple punishments for aggravated assault of a public servant and intoxication assault in this case.

In *Gonzales*, the court of criminal appeals explained that to determine the legislature's intent of whether a defendant may be convicted of two offenses that arise from the same criminal transaction, courts may consider

> whether the offenses['] provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, . . . and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.

304 S.W.3d at 846 (quoting *Ervin*, 991 S.W.2d at 814) (providing non-exclusive catalog of considerations to help courts determine legislative intent); *see also Bigon*, 252 S.W.3d at 371 (discussing *Ervin* factors). More recently, the court of criminal appeals has indicated that the focus, or gravamen, of a penal provision at issue is the best indicator when it comes to determining whether the legislature intended to define more than one offense and punish one incident through multiple convictions. *See Harris v. State*, 359 S.W.3d 625, 630 (Tex. Crim. App. 2011); *Gonzales*, 304 S.W.3d at 848.

Consideration of the first four *Ervin* factors here does not indicate that the legislature intended for these offenses to be treated the same for double jeopardy purposes or to disallow multiple punishments. The offenses of aggravated assault of a public servant and intoxication assault are not within the same statutory section or even the same Penal Code chapter. Aggravated assault of a public servant is contained in section 22.02 of the Penal Code while intoxication assault is contained in section 49.07. Consequently, the offenses are not phrased in the alternative, although they are named similarly, both using the word "assault." The offenses do not have common punishment ranges. As alleged here, aggravated assault of a public servant is a first degree felony whereas intoxication assault is a third degree felony. *See* Tex. Penal Code §§ 22.02(b)(2)(B), 49.07(c).

The "gravamen" or "focus" of an offense is the primary conduct or evil the legislature intends to prevent or punish. *See Martinez v. State*, 269 S.W.3d 777, 780–81 (Tex. App.—Austin 2008, no pet.). To support his position that aggravated assault on a public servant and intoxication assault are the same offenses for double jeopardy purposes, Shelby centers his argument on the focus or gravamen factor of the *Ervin* analysis. Relying on *Burke v. State*, he asserts that the gravamen of the two offenses for which he was convicted is the same: assaultive conduct against a single person. In *Burke*, the appellant pled guilty to the offenses of reckless aggravated assault with serious bodily injury and intoxication assault. *Burke v. State*, 6 S.W.3d 312, 315 (Tex. App.—Fort Worth 1999), *overruled on other grounds*, 28 S.W.3d 545 (Tex. Crim. App. 2000). The Fort Worth Court of Appeals concluded that the gravamen of reckless aggravated assault and intoxication assault is serious bodily injury to an individual. We find the instant case distinguishable from *Burke*. Here,

11

Shelby was convicted of aggravated assault of a public servant with a deadly weapon, not aggravated assault with serious bodily injury. While reckless aggravated assault with serious bodily injury and intoxication assault may share the same gravamen, we do not believe that aggravated assault of a public servant with a deadly weapon and intoxication assault share the same gravamen. Further, we disagree with Shelby's contention that the gravamen of both offenses in this case is simply assaultive conduct against a person.

One aid in determining the gravamen of an offense is to identify "the offense element that requires a completed act." *Harris*, 359 S.W.3d at 630; *Jones*, 323 S.W.3d at 890; *see, e.g.*, *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006) (unlawful entry is gravamen of burglary because offense is complete once unlawful entry is made); *Ex parte Hawkins*, 6 S.W.3d 554, 555 (Tex. Crim. App. 1999) (assault is gravamen of robbery because assault must be complete, but theft only need be attempted). Here, aggravated assault of a public servant as charged requires not just the completed act of causing bodily injury to someone—that would merely be an assault—but the completed act of bodily injury to *a public servant*. Moreover, the offense element of using a deadly weapon is an act that must be completed for the assault to be an aggravated assault. Thus, the gravamen of the offense of aggravated assault of a public servant as charged here is not merely causing bodily injury to someone, but causing bodily injury to a public servant using a deadly weapon. *See e.g.*, *Landrian v. State*, 268 S.W.3d 532, 543 (Tex. Crim. App. 2008) (Price, J., concurring) ("[T]he gravamen of *aggravated* assault must be, in legislative contemplation, causing bodily injury—*plus something more*. . . . It seems quite plausible to me to argue that the aggravated assault statute thus embodies two very distinct gravamens, and that bodily injury constitutes a

12

subset-gravamen of each. The first aggravated assault gravamen is that the defendant caused *serious bodily injury*. The second is that the defendant caused bodily injury and *brandished a deadly weapon* in the process."). We believe the gravamen of the aggravated assault offense for which Shelby was convicted is not "causing serious bodily injury to another" as in *Burke* or merely "assaultive conduct against a person" as Shelby maintains, but rather causing bodily injury to a public servant using a deadly weapon. Causing bodily injury, using a deadly weapon, and injuring a public servant are all offense elements requiring completed acts for this offense.

Meanwhile, intoxication assault involves different offense elements requiring completed acts. In addition to causing serious bodily injury to another, the defendant's intoxication must cause the serious bodily injury. *See Daniel v. State*, 577 S.W.2d 231, 233–34 (Tex. Crim. App. 1979). Thus, the gravamen of intoxication assault is causing serious bodily injury to someone by reason of intoxication. Serious bodily injury, intoxication, and a causal connection between the two are necessary for the offense. *See, e.g.*, *Byrd v. State*, 336 S.W.3d 242, 250–51 (Tex. Crim. App. 2011) ("[T]he gravamen of theft is two-pronged—taking certain specified property away from its rightful owner or depriving that owner of its use or enjoyment. Ownership and appropriation of property are both important.").

Additionally, in determining whether the two offenses have a common focus, we note that while the charged offenses appear to share a similar focus of causing injury to someone, the two offenses were designed to serve different purposes. Aggravated assault of a public servant is contained within Penal Code Chapter 22, while intoxication assault is contained within Penal Code Chapter 49. Chapter 22, *Assaultive Offenses*, appears in Title 5 of the Code, *Offenses Against the*

13

*Person*. The focus of the Chapter 22 provisions is intentional, knowing or reckless infliction of harm to others. *Burke v. State*, 28 S.W.3d 545, 549 (Tex. Crim. App. 2000).[2] Here, the focus of aggravated assault of a public servant, as charged in this case, is on causing bodily injury to a public servant using a deadly weapon. Chapter 49 is contained in Title 9 of the Penal Code, *Offenses Against the Public Order and Decency*. The focus of these provisions is the consumption of alcohol in connection with conduct that places others in danger. *Id.* Thus, the focus of intoxication assault is on causing serious bodily to another by reason of intoxication while driving a motor vehicle in a public place. Intoxication assault requires the injury to be caused by the intoxication of the defendant, while aggravated assault of a public servant does not require such causation.

Furthermore, the two offenses do not apply to the same classes of people—either the persons whose conduct is being punished or the persons protected by the statute. Under section 22.02, nothing about the defendant matters with the exception of his mental state—he must have acted intentionally, knowingly, or recklessly. *See id.* By contrast, an offense under section 49.07 is entirely dependent upon the defendant's status as an intoxicated driver, but his mental state is irrelevant. *See id.* In addition, the status of the victim is a crucial element of aggravated assault of a public servant, *see* Tex. Penal Code § 22.02(b)(2)(B), whereas the status of the victim of intoxication assault is irrelevant. Under intoxication assault, a person is punished for causing serious

---

[2] We recognize that in *Burke v. State* the court of criminal appeals was addressing the issue of whether the offenses in that case, reckless aggravated assault with serious bodily injury and intoxication assault, were in *pari materia*, rather than the appellate court's determination that they were the same offense for double jeopardy purposes. However, we find the court's analysis of the purpose of the Penal Code chapters instructive here.

14

bodily injury to another with his vehicle while he was intoxicated, regardless of his intent or whom he injures.

In identifying the offense elements that require completed acts and looking at the purpose of each statutory provision, we conclude that these two offenses—aggravated assault of a public servant with a deadly weapon and intoxication assault—involve gravamen that, though somewhat similar in part, are distinct.

In concluding our analysis of legislative intent we do not find any legislative history articulating an intent to treat the offenses of aggravated assault of a public servant with a deadly weapon and intoxication assault as the same or different for double jeopardy purposes. In examining this factor, we distinguish the instant case from *Ervin v. State* and *Bigon v. State.* In *Ervin*, the court of criminal appeals held that manslaughter and intoxication manslaughter are the same offense for double jeopardy purposes when they involve the death of the same victim. *Ervin*, 991 S.W.2d at 817. In analyzing the legislative history of the intoxication manslaughter statute, the court noted that prior to the enactment of section 49.08 (the intoxication manslaughter statute), the offense, although not named "intoxication manslaughter," was contained within the involuntary manslaughter statute. *Id.* at 815. Thus, manslaughter and intoxication manslaughter were merely alternate methods of committing the offense of involuntary manslaughter under that statute. *Id.*; *see* Act of May 29, 1987, 70th Leg., R.S., ch. 307, § 1, sec. 19.05, 1987 Tex. Gen. Laws 1698 (former Tex. Penal Code § 19.05(a)(1) & (2) now codified at Tex. Penal Code §§ 19.04 & 49.08). In *Bigon*, the court of criminal appeals held that felony murder is the same as intoxication manslaughter, and intoxication manslaughter is the same as manslaughter, when they involve the death of the same victim. *Bigon*,

15

252 S.W.3d at 371. Referring to *Ervin*, the court similarly noted that felony murder and intoxication manslaughter (as a subsection of the involuntary manslaughter statute) were previously in the same statutory chapter containing all the homicide offenses, and again observed that intoxication manslaughter, called involuntary manslaughter by driving while intoxicated, was considered an alternative way to commit manslaughter. *Bigon*, 252 S.W.3d at 371–72; *see* Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, sec. 19.02, 1973 Tex. Gen. Laws 1122, 1123 (former Tex. Penal Code § 19.01(a)(3) now codified at Tex. Penal Code § 19.02(b)(3)); Act of May 29, 1987, 70th Leg., R.S., ch. 307, § 1, sec. 19.05, 1987 Tex. Gen. Laws 1698 (former Tex. Penal Code § 19.05(a)(2) now codified at Tex. Penal Code § 49.08). Here, the intoxication assault statute has no similar legislative history. It was never previously contained in the assault or aggravated assault statutes as an alternative manner and means of committing assault. Thus, unlike *Ervin* and *Bigon*, the two offenses have never been contained within the same statutory section or chapter, were never phrased in the alternative, and never had the same penalty range. We do not find the legislative history of the intoxication assault statute indicative of the legislature's intent to treat these offenses as the same offense for double jeopardy purposes.

In sum, while both aggravated assault of a public servant with a deadly weapon and intoxication assault share a similar element—causing some degree of injury to someone—they share nothing else. The two sections appear in different chapters of the Penal Code, apply to different classes of people (both perpetrators and victims), carry different punishment ranges, have different focuses and distinct gravamen, and were designed to serve different purposes. These dissimilarities indicate that the legislature intended to treat the two offenses as different offenses. Accordingly,

16

using the considerations set out by *Ervin*, we find no indication that the legislature did not intend to authorize multiple punishments for the offenses of aggravated assault of a public servant with a deadly weapon and intoxication assault if they occur in the course of a single transaction as a result of the same conduct.

Because the two offenses are not the same for the purposes of double jeopardy under either the *Blockburger* "sameness" test or an *Ervin* legislative-intent analysis, we conclude that Shelby did not suffer multiple punishments in violation of double jeopardy protections. We overrule Shelby's first point of error.

## Sufficiency of the Evidence

In his second and third points of error, Shelby asserts that the evidence is insufficient to support his convictions for intoxication assault against Trooper Hoppas and the motorist, Kurt Pavia, because it fails to prove that his intoxication caused the collision.

*Standard of Review*

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 313 (1979); *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

17

In determining the legal sufficiency of the evidence, we must consider all the evidence in the record, whether direct or circumstantial, properly or improperly admitted, or submitted by the prosecution or the defense. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Moff v. State*, 131 S.W.3d 485, 489–90 (Tex. Crim. App. 2004); *Allen v. State*, 249 S.W.3d 680, 688–89 (Tex. App.—Austin 2008, no pet.). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 318; *see Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The jury, as the exclusive judge of the facts, is entitled to weigh and resolve conflicts in the evidence and draw reasonable inferences therefrom. *Clayton*, 235 S.W.3d at 778; *see* Tex. Code Crim. Proc. art. 38.04. Thus, when faced with a record of historical facts that supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326; *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

The standard of review on appeal is the same for both direct and circumstantial evidence cases. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). Circumstantial evidence is as probative as direct evidence in establishing guilt and may alone be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Every fact does not need to point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* So long as "the verdict is supported by a reasonable inference, it is within the province of the factfinder to choose which inference is most reasonable." *Laster*, 275 S.W.3d at 523. As with any question of

18

circumstantial evidence and inference, "the jurors are free to use their common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *Boston v. State*, 373 S.W.3d 832, 837 (Tex. App.—Austin 2012, pet. granted) (quoting *Obigbo v. State*, 6 S.W.3d 299, 306 (Tex. App.—Dallas 1999, no pet.)).

Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *Allen*, 249 S.W.3d at 688; *see Laster*, 275 S.W.3d at 517–18. We consider only whether the jury reached a rational decision. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

*Intoxication Assault*

A person commits the offense of intoxication assault if, by accident or mistake, while operating a motor vehicle in a public place while intoxicated, by reason of that intoxication he causes serious bodily injury to another. *See* Tex. Penal Code § 49.07(a). A person is "intoxicated" if he does not have the normal use of his mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body, or by having an alcohol concentration of 0.08 or more. *See id.* § 49.01(2)(A), (B).

Under the Texas Penal Code, "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." *Id.* § 6.04(a). To prove causation for intoxication assault, the State is

19

required to prove the defendant's intoxication, not just his operation of the vehicle, caused the accident. *See, e.g.*, *Hardie v. State*, 588 S.W.2d 936, 939 (Tex. Crim. App. 1979); *Wooten v. State*, 267 S.W.3d 289, 296 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). In this case, the State must prove the causal connection between Shelby's intoxication and the complainants' serious bodily injuries. *See Daniel*, 577 S.W.2d at 233–34; *Wooten*, 267 S.W.3d at 295. Whether such a causal connection exists is a question for the jury's determination. *See Hardie*, 588 S.W.2d at 939; *Wooten*, 267 S.W.3d at 295. A jury may draw reasonable inferences regarding the ultimate facts from basic facts. *See Jackson*, 433 U.S. at 319; *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000). Circumstantial evidence may be used to establish a causal connection. *Wooten*, 267 S.W.3d at 296; *see Hooper*, 214 S.W.3d at 13.

"But for" causation, as referred to in section 6.04(a) of the Penal Code, must be established between a defendant's conduct and the resulting harm. *See Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986); *Wooten*, 267 S.W.3d at 295. When concurrent causes are present, the "but for" requirement is satisfied when either (1) the defendant's conduct is sufficient by itself to have caused the harm, or (2) the defendant's conduct coupled with another cause is sufficient to have caused the harm. *Robbins*, 717 S.W.2d at 351. If the additional cause, other than the defendant's conduct, is clearly sufficient, by itself, to produce the result *and* the defendant's conduct, by itself, is clearly insufficient, then the defendant cannot be convicted. *Id.*

In these two points of error, Shelby challenges the sufficiency of the evidence on the issue of causation. He argues the evidence is insufficient to show that his intoxication caused the collision that injured both Trooper Hoppas and Pavia. He asserts that no evidence demonstrates that

20

his driving was impaired due to intoxication and there was another more plausible and logical explanation for the accident—his assault on Lopez while he was driving.[3] Contrary to his assertion, however, the record does contain evidence that Shelby's driving was impaired by his intoxication.

Evidence of Shelby's intoxication included testimony about the strong odor of alcohol about Shelby's person, his red watery eyes, his difficulty with balance more than one hour after the accident, his admission to "feeling buzzed," and the results of the HGN standardized field sobriety test where Shelby displayed all six indicators of intoxication. A blood test revealed Shelby's blood alcohol concentration to be 0.13, more than one-and-a-half times the amount that defines intoxication in the Penal Code, over two hours after the collision. The testimony of the toxicologist indicated that Shelby's blood alcohol concentration was possibly higher than that at the time of the accident. In addition, the jury heard evidence from the toxicologist that alcohol affects a person's judgment, motor skills, ability to keep balance, muscle coordination, and reaction time. Further, one of the passengers in the truck characterized Shelby's driving as "reckless" and testified that he was scared for his life. He also testified that Shelby "wasn't in his right mind."

In this case, the evidence consistent with guilt showed that Shelby was driving his truck on Interstate 35 and suddenly veered across three lanes of traffic to hit the trooper's car parked on the shoulder of the highway. The testimony reflected that the trooper's car, with its emergency lights flashing, was visible from a distance. By his own admission, Shelby had been drinking on and off all day before the accident. The testimony of the toxicologist indicated that Shelby's blood

---

[3] We note that this theory of causation was not presented to the jury. Rather, at trial Shelby maintained that Lopez caused the collision when he grabbed the steering wheel in his anger and jerked the truck toward the trooper's car.

21

alcohol concentration was possibly higher than 0.13 at the time of the accident. The evidence and testimony reflected that Shelby never applied his brakes or engaged in any evasive maneuvers prior to the collision.

In cases of this nature, the existence or nonexistence of a causal connection is a question for the jury. *See Hardie*, 588 S.W.2d at 939; *Wooten*, 267 S.W.3d at 296. The jury in this case was instructed that a guilty verdict required a finding of a causal connection between Shelby's intoxication and the injuries of Trooper Hoppas and Pavia. Based on the evidence proffered by the State, a rational factfinder could have found beyond a reasonable doubt that Shelby operated a motor vehicle on a public street at a time when he was intoxicated. *See* Tex. Penal Code §§ 49.07(a), 49.01(2). Additionally, a rational factfinder reasonably could have found that "but for" Shelby's intoxication, the collision and resulting serious bodily injury to the complainants would not have occurred. *See id.* §§ 6.04, 49.07(a). The jury could have reasonably concluded that someone in full command of his mental and physical faculties who did not have a blood alcohol concentration over the legal limit would have been able to avoid hitting the trooper's parked vehicle—or at least attempt to do so by braking or employing evasive maneuvers—but that Shelby did not because he was intoxicated. The jury could have reasonably concluded that Shelby's faculties were impaired because he was intoxicated and that this impairment caused, or at the very least, contributed to the collision. Finally, even if Shelby's assault against Lopez was a factor that contributed in some way to the accident, Shelby's intoxication combined with the assault of Lopez while driving, cannot possibly be characterized as being insufficient conduct to cause the accident.

Viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the essential elements of intoxication assault beyond a reasonable doubt. Therefore, the evidence is legally sufficient to sustain Shelby's convictions. We overrule Shelby's second and third points of error.

## Admission of Extraneous Offenses

In his next two points of error, Shelby complains about the admission of evidence of his previous domestic violence offenses. In his fourth point of error, he asserts that the trial court erred in admitting a videotape of his interrogation which contains references to previous assaults. In his fifth point of error, he maintains that the trial court erred in overruling his objections to testimony about the previous assaults. In both points of error, he argues that this evidence was inadmissible character conformity evidence under Rule 404(b) of the Texas Rules of Evidence.

*The Videotape*

Before trial, Shelby filed a "Motion in Limine" asking the court to "order the State's Prosecutor not to mention or allude to extraneous offenses by Defendant in any manner in the presence of the jury until a hearing has been held outside the presence of the jury and prior to the Court's determination of relevancy." The court overruled this motion. Subsequently, during trial, the State offered into evidence a videotape of Shelby's interview with law enforcement on which he mentioned extraneous domestic violence incidents. In response, Shelby's attorney stated that she had "No objection" to the admission of the videotape.

23

On appeal, Shelby complains about the admission of the videotape and argues that his motion in limine was sufficient to preserve error regarding its admission. He argues that although the motion was styled a "motion in limine," it actually operated as a "motion to suppress." *Compare Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008) (motion in limine does not preserve error), *with Estrada v. State*, 313 S.W.3d 274, 302 (Tex. Crim. App. 2010) (motion to suppress generally suffices to preserve error). We reject this argument for two reasons. First, the above-quoted language from Shelby's pre-trial motion clearly indicates that the motion was a motion in limine, not a motion to suppress. *See Harnett v. State*, 38 S.W.3d 650, 655 (Tex. App.—Austin 2000, pet. ref'd) (motion in limine "is a motion requesting that the opposing party be directed to approach the trial court before offering certain types of evidence, asking certain questions, or otherwise going into particular areas before the jury"). As a result, the motion failed to preserve error. *Fuller*, 253 S.W.3d at 232. Second, even if Shelby's pre-trial motion was a motion to suppress, Shelby's attorney waived error regarding the admission of the videotape by stating that she had "No objection" to the admission of the videotape into evidence. *See Estrada*, 313 S.W.3d at 302 ("'It is settled that when a pre-trial motion to suppress evidence is overruled, the accused need not subsequently object to the admission of the same evidence at trial in order to preserve error. However, when the accused affirmatively asserts during trial he has 'no objection' to the admission of the complained of evidence, he waives any error in the admission of the evidence despite the pre-trial ruling.'" (quoting *Gearing v. State*, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985)).

24

*Lopez's Testimony*

Shelby also complains about the trial court's admission of live testimony by Lopez regarding Shelby's extraneous assault offenses against him. Shelby argues that his motion in limine was sufficient to preserve error with regard to the testimony, but for the reasons just explained we reject this argument. Shelby asserts that he did make one direct objection to Lopez's testimony, but we hold that this objection was insufficient to preserve error.

During direct examination, the prosecutor asked Lopez whether Shelby had ever hit him before the incident at issue. Shelby's attorney objected to the question and asked to approach the bench, where the following exchange occurred:

> DEFENSE COUNSEL: Under the motion in limine -- you were talking about prior domestic violence, I guess is what [the prosecutor] wants to get into. You ruled that that could come in on the video. I think it's -- this is extraneous, what she wants to do --
>
> PROSECUTOR: Your Honor --
>
> DEFENSE COUNSEL: -- in person with him.
>
> PROSECUTOR: I'm offering the prior incidents of domestic violence in rebuttal to the defense that [Lopez] was the one hitting [Shelby]. And it's to show his intent, his opportunity, his motive for doing those things that night.
>
> THE COURT: Overrule the objection.

Shelby did not object on the basis of inadmissible character conformity evidence under Rule 404(b). Shelby simply made a general objection, referring to the motion in limine. This objection did not preserve error.

25

Assuming arguendo Shelby's objection did preserve error, the trial court did not abuse its discretion in admitting Lopez's testimony about Shelby's previous assaults. We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion in this regard only if its determination "lies outside the zone of reasonable disagreement." *Id.*; *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court's decision to admit evidence of an extraneous offense is generally within this zone if the evidence shows that (1) an extraneous transaction is relevant to a material, non-propensity issue, and (2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Texas Rule of Evidence 404(b) prohibits the admission of evidence of extraneous offenses to prove a person's character or to show that the person acted in conformity with that character. *See* Tex. R. Evid. 404(b). However, "'Rule 404(b) is a rule of inclusion rather than exclusion.'" *De La Paz*, 279 S.W.3d at 343 (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir.2000)). "The rule excludes only that evidence that is offered (or will be used) *solely* for the purpose of proving bad character and hence conduct in conformity with that bad character." *Id.* (citing *Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996)) (emphasis added). Extraneous-offense evidence may be admissible when it has relevance apart from character conformity. *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). Such evidence may be admissible for some other purpose such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R. Evid. 404(b); *Montgomery v. State*,

26

810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990) (op. on reh'g). This list is illustrative—the exceptions are neither mutually exclusive nor collectively exhaustive. *See De La Paz*, 279 S.W.3d at 343. Extraneous-offense evidence may also be admissible to rebut defensive theories. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) (rebuttal of defensive theory is "one of the permissible purposes for which [relevant] evidence may be admitted under Rule 404(b)").

Shelby appears to suggest in his argument that the evidence was not admissible to rebut a defensive theory because the State offered the evidence to rebut Shelby's contention on his videotaped interview that he was the victim of the assault, not the aggressor, but the video was introduced by the State. However, Shelby raised his defensive theory—that Lopez attacked him while he was driving the truck and, during that attack, grabbed the wheel causing the accident—during his opening statement.[4] *See Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (recognizing that even defense opening statement opens door to admission of extraneous-offense evidence to rebut defensive theory raised in statement). Thus, the trial court could have concluded that the evidence of the extraneous prior assaults rebutted the defensive theory

---

[4] Specifically, defense counsel asserted in her opening statement:

The person that had control of that vehicle seconds before that crash was not John Shelby but Frank -- Frank Lopez. It was actually Mr. Lopez who was attacking Mr. Shelby as he drove. Reached over in his rage, took hold of that wheel and dragged that truck, making it veer across three lanes of traffic into the back of Trooper Hoppas' vehicle.

Mr. Shelby fled that scene because he was trying to flee not the scene but Mr. Lopez. He feared for his life.

presented to the jury. Consequently, we cannot say that the trial court's admission of the complained-of testimony was an abuse of discretion.

Furthermore, any error in the admission of the complained-of testimony was not reversible error. Although Shelby objected when the prosecutor asked Lopez whether this was the first time Shelby had hit him, he did not object to subsequent questions in which the prosecutor asked Lopez to describe Shelby's previous acts of violence. *See Coble v. State*, 330 S.W.3d 253, 282 (Tex. Crim. App. 2010) (quoting *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[E]rroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'").

For the foregoing reasons, we overrule Shelby's fifth point of error.

**Punishment Testimony**

In his sixth point of error, Shelby argues that the trial court erred by admitting Trooper Hoppas's "opinion testimony" during the punishment phase. When Hoppas returned to the stand in the punishment phase, the prosecutor asked Hoppas how he would feel if Shelby received probation rather than jail time. Hoppas responded that he would be disappointed. Shelby did not lodge an objection at any point during this exchange.

To preserve a complaint for appellate review, a party must have presented a specific and timely request, motion, or objection to the trial court and, further, must have obtained an adverse ruling. Tex. R. App. P. 33.1(a); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011); *Peavey v. State*, 248 S.W.3d 455, 470 (Tex. App.—Austin 2008, pet. ref'd). Preservation of error is a systemic requirement on appeal. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009); *Haley*

*v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005).  A reviewing court should not address the merits of an issue that has not been preserved for appeal.  *Wilson v. State*, 311 S.W.3d 452, 473–74 (Tex. Crim. App. 2010) (citing *Ford*, 305 S.W.3d at 532).

Because Shelby failed to object to the complained-of testimony at trial, he failed to preserve error and forfeited the right to complain about such testimony on appeal.  Accordingly, we overrule Shelby's sixth point of error.

## CONCLUSION

For the foregoing reasons, we affirm the judgments of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed:   August 28, 2013

Do Not Publish

29