# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00391-CR

**Angel Martinez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. D-1-DC-06-302188, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## O P I N I O N

Angel Martinez appeals his convictions for burglary with intent to commit aggravated sexual assault and burglary with intent to commit theft. *See* Tex. Penal Code Ann. § 30.02(a) (West 2003). He received a forty-year sentence for the former conviction and twenty years for the latter. In two points of error, Martinez contends that his two convictions, which were based on the same incident in which he entered a residence, violate his right to be free of double jeopardy, and that the charge enabled the jury to convict him based on less than a unanimous verdict. We sustain Martinez's first point of error but overrule his second. Martinez further argues that our remedy for the double-jeopardy violation should be to vacate his conviction for burglary with intent to commit aggravated sexual assault and affirm his conviction for burglary with intent to commit theft. Concluding that current law requires the opposite, we will vacate Martinez's conviction for

burglary with intent to commit theft and affirm his conviction for burglary with intent to commit sexual assault.

Martinez does not challenge the sufficiency of the evidence supporting either of his convictions. For our purposes here, we need only note that it is undisputed both convictions were based on a single incident in which Martinez had entered the home of an elderly woman. The victim testified at trial that Martinez broke into her house during the early morning hours of September 28, 2006, sexually assaulted or attempted to sexually assault her, then stole some of her personal property before departing.

Martinez was indicted on two counts of burglary. Each count of the indictment contained two paragraphs. Count I, paragraph 1 alleged that on or about September 28, 2006, Martinez "with intent to commit the felony offense of aggravated sexual assault enter[ed] a habitation without the effective consent of [the victim,] the owner thereof." Paragraph 2 alleged that Martinez, on or about the same date, "intentionally or knowingly enter[ed] a habitation, without the effective consent of [the victim,] the owner thereof, and attempted to commit or committed the felony offense of aggravated sexual assault." Paragraphs 1 and 2 corresponded to, respectively, subsections (a)(1) and (a)(3) of section 30.02 of the penal code. *See* Tex. Penal Code Ann. § 30.02(a)(1) & (3). Count II of the indictment was parallel to count I, with two paragraphs containing allegations corresponding to subsections (a)(1) and (3) of section 30.02, but instead referencing the underlying offense of theft rather than aggravated sexual assault.

The jury charge essentially tracked the indictment, with a separate general verdict form for each count. However, the jury was instructed to find Martinez guilty on each count if it

2

found that *either* Martinez had entered a habitation without the victim's effective consent with intent to commit the underlying offense (subsection (a)(1)) *or* Martinez had entered a habitation without the victim's effective consent and committed or attempted to commit the underlying offense (subsection (a)(3)).[1] Although the jury was instructed that its verdicts had to be unanimous, the disjunctive submission of each count enabled the jury to find guilt without each juror necessarily agreeing on the same alternative theory supporting that finding.

The jury found Martinez guilty on both counts. The district court assessed punishment at forty years' imprisonment on count I and twenty years' imprisonment on count II, to run concurrently.

---

[1] The application paragraph regarding count I stated:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, Angel Roel Martinez, on or about the 28th day of September 28, 2006, in the County of Travis, and State of Texas, did then and there, with intent to commit the felony offense of aggravated sexual assault, enter a habitation without the effective consent of [victim], the owner thereof; or

> If you believe from the evidence beyond a reasonable doubt that on or about the 28th day of September 28, 2006, in the County of Travis, and State of Texas, that Angel Roel Martinez, did then and there intentionally or knowingly enter a habitation, without the effective consent of [victim], the owner thereof, and attempted to commit or committed the felony offense of aggravated sexual assault.

> You will find the defendant guilty of the offense of burglary of a habitation (aggravated sexual assault) as alleged in count one of the indictment . . . .

The application paragraphs for count II were substantively identical except that "the felony offense of aggravated sexual assault" was replaced with "theft" in the first paragraph and "theft of property" in the second. Similarly, the third paragraph referred to ". . . burglary of a habitation (theft) as alleged in count two of the indictment."

3

Martinez's core contention of appeal is that subsections (a)(1) and (a)(3) of section 30.02 establish separate criminal offenses. In his view, "[o]n its face, the indictment alleges four crimes in two counts—burglary of a habitation with the intent to commit the felony offense of aggravated sexual assault; burglary of a habitation and then attempted commission or commission of aggravated sexual assault; burglary of a habitation with the intent to commit theft; burglary of a habitation and then attempted commission or commission of theft." Based on this view, Martinez argues in his second point of error that the charge erroneously enabled the jury to render non-unanimous verdicts in each count regarding "separate offenses" under subsections (a)(1) and (3), and that this constituted egregious harm.[2] At the same time, Martinez also urges in his first point of error that his convictions for both counts I and II—which he seems to view as subsuming duplicative convictions for both an offense of burglary with intent to commit either sexual assault or theft (subsection (a)(1)) and a separate offense of burglary of a habitation with attempted commission or commission of either aggravated sexual assault or theft (subsection (a)(3))—violates double-jeopardy. *See Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006) (convictions for both burglary of a habitation with intent to commit sexual assault and burglary of habitation with intent to commit theft arising from single entry incident violated double jeopardy).

The State responds that, in essence, Martinez's convictions were based on a single offense for both double-jeopardy and jury-unanimity purposes. As to double jeopardy, the State acknowledges that "[t]he victim described only one incident in which her home was burglarized"

---

[2] Martinez did not raise a jury-unanimity objection to the charge at trial. Consequently, any charge error is not reversible unless Martinez incurred egregious harm. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

4

and that "there is no evidence in the record suggesting that the appellant entered the victim's home more than one time." Consequently, the State concedes that double jeopardy bars Martinez's convictions on two counts of burglary that differed only with respect to whether the underlying offense was aggravated sexual assault or theft. *See Cavazos*, 203 S.W.3d at 337. As we explain below, the State is correct that the record establishes a double-jeopardy violation. However, the State insists that subsections (a)(1) and (3) of section 30.02 do not establish separate criminal offenses, but merely alternative manners and means by which the offense of burglary can be committed or proven. Thus, the State reasons, the disjunctive submission of these alternatives within each count did not deprive Martinez of a unanimous verdict.

"Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases." *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005); *see* Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2007), arts. 37.02, 37.03, 45.034-.036 (West 2006). This means "the jury must agree [unanimously] that the defendant committed one specific crime." *Landrian v. State*, ___ S.W.3d ___, No. PD-1561-07, 2008 Tex. Crim. App. LEXIS 1183, at *9 (Tex. Crim. App. Oct. 8, 2008) (citing *Stuhler v. State*, 218 S.W.3d 706, 717-19 (Tex. Crim. App. 2007)). "That does not mean, however, that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act." *Id*. "To discern what a jury must be unanimous about, appellate courts examine the statute defining the offense to determine whether the legislature created multiple, separate offenses, or a single offense with different methods or means of commission." *Pizzo v. State*, 235 S.W.3d 711, 714 (Tex. Crim. App. 2007) (citations and quotations omitted); *see*

5

*also Martinez v. State*, 212 S.W.3d 411, 416 (Tex. App.—Austin 2006, pet. ref'd) ("allowing a jury to choose between alternative theories of how an offense was committed does not run afoul of the unanimous-verdict requirement.").

In numerous recent cases, the court of criminal appeals has addressed the distinction between separate offenses and "manner or means" in the context of jury-unanimity challenges concerning nominally single offenses submitted disjunctively and their counterpart, double-jeopardy challenges to multiple convictions for separately-submitted, nominally different offenses. *See Huffman v. State*, ___ S.W.3d ___, ___, No. PD-1539-07, 2008 Tex. Crim. App. LEXIS 1180, at * 4 (Tex. Crim App. Oct. 1, 2008) ("Our jury unanimity opinions and several of our double jeopardy opinions address the same basic question: do different legal theories of criminal liability comprise different offenses, or do they comprise alternative methods of committing the same offense."). In general, the court has attempted to ascertain whether particular factual components of the offense are essential elements, which a jury must find unanimously, as opposed to "preliminary" or "underlying" facts that are means by which an element can be met or proven. *See Stuhler*, 218 S.W.3d at 718-19; *Ngo*, 175 S.W.3d at 745-47. In this connection, it has also sought to identify the "gravamen" or "focus" of the offense—the primary conduct or evil the legislature was intending to prevent or punish—including whether the offense is focused on a particular result, a particular nature or type of conduct, or particular circumstances surrounding conduct or a result. *Huffman*, 2008 Tex. Crim. App. LEXIS 1180, at *10-11 ("[t]he common thread in all of these cases [distinguishing separate offenses from mere manner and means] seems to be 'focus' . . . If the focus of the offense is the result—that is, the offense is a 'result of conduct' crime—then different types

6

of results are considered to be separate offenses, but different types of conduct are not. On the other hand, if the focus of the offense is the conduct—that is, the offense is a 'nature of conduct' crime—then different types of conduct are considered to be separate offenses."); *Landrian*, 2008 Tex. Crim. App. LEXIS 1183, at \*14-15 (determining that gravamen of offense of aggravated assault was "causing bodily injury" and that "[t]he precise act or nature of conduct in this result-oriented offense is inconsequential."); *Pizzo*, 235 S.W.3d at 717 (determining that "commits . . . sexual contact with a child by touching . . ." denoted a nature-of-conduct offense and that alternative sites of touching denoted different offenses); *Stuhler*, 218 S.W.3d at 718-19 (characterizing offense of injury to a child as a "result of conduct" offense, such that causing "serious bodily injury" to a child was a separate offense from causing "serious mental deficiency, impairment or injury"). For further guidance, the court has also looked to what it terms "eighth-grade grammar." *Pizzo*, 235 S.W.3d at 717 (diagraming the sexual contact with a child statute and determining that statute focused on nature of conduct); *Stuhler*, 218 S.W.3d at 718-19 (determining that injury to a child is a result-oriented offense based on fact that offense has "main verb" of "causes" and alternative direct objects describing the prohibited results); *see also Ngo*, 175 S.W.3d at 745 n.24 ("A handy, though not definitive, rule of thumb is to look to the statutory verb defining the criminal act [which] . . . is generally the criminal act upon which all jurors must unanimously agree.").

Section 30.02 of the penal code, titled "Burglary," provides, in relevant part:

A person commits an offense if, without the effective consent of the owner, the person:

(1)     enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or

7

(2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation;  or

(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

Tex. Penal Code Ann. § 30.02(a).   The court of criminal appeals has identified the elements of burglary, as defined in subsection (a)(1), as (1) intentionally or knowingly (the general culpable mental state required by the penal code[3]) (2) entering a habitation or building (or portion thereof) not then open to the public (3) without the effective consent of the owner, and (4) with the intent to commit a felony, theft, or assault.  *DeVaughn v. State*, 749 S.W.2d 62, 64 (Tex. Crim. App. 1988). The State must prove that intent to commit a felony, theft, or assault existed at the moment of entry. *Id*. at 65.   Thus, under subsection (a)(1), the general culpable mental state of intentional or knowing entry is subsumed within the element of specific intent to commit a felony, theft, or assault.  *Id*. at 64 n.3.  Another implication is that "the offense is complete upon entry; a completed felony or theft [or assault] is unnecessary."  *Id.* at 65.

As suggested by the grammatical structure of subsection (a)(1), its primary focus or gravamen is the verb and direct object—"enters a habitation or a building"—modified by the prepositional phrase "without the effective consent of the owner" (a circumstance distinguishing burglarious entry from the mere act of entering a habitation or building, which is not inherently illegal), and accompanied by the requisite mental state attaching to the entry (an element

---

[3] "Although no general culpable mental state is set forth in the statute, it is settled that the entry must be intentional or knowing." *DeVaughn v. State*, 749 S.W.2d 62, 64 n.3 (Tex. Crim. App. 1988).

distinguishing burglary from trespass[4]).  *See id*. at 65.  The fact that the required mental state attaches to the act of entry is an indicator that this act was intended to be the focus or gravamen of the offense.  *Cf. Huffman*, 2008 Tex. Crim. App. LEXIS 1180, at \*13 (fact that legislature required culpable mental state to attach to a particular circumstance and not a particular result or particular nature of conduct indicated that the circumstance was the gravamen of the offense).  The statute's focus on entry is also recognized in other court of criminal appeals opinions characterizing burglary as a crime against property, as opposed to an assaultive crime, whose "harm results from the entry itself."  *Cavazos*, 203 S.W.3d at 337 (citing *Richardson v. State*, 888 S.W.2d 822, 824 (Tex. Crim. App. 1994)).  More generally, the court has explained that "[o]ur burglary statutes are intended to protect the sanctity of private areas, be they habitations, buildings not open to the public, or vehicles," and the entry itself causes the harm "because the intrusion violates the occupant's reasonable expectation of privacy."  *Richardson*, 888 S.W.2d at 824 .  Thus, in *Cavazos*, the court held that convictions for both burglary with intent to commit aggravated sexual assault and burglary with intent to commit theft arising from a single act of entering a residence were barred by double jeopardy, even where each count had a different complainant, as "the allowable unit prosecution in a burglary is the unlawful entry."  *Cavazos*, 203 S.W.3d at 337.  For this reason, the State, with good reason, conceded Martinez's first point of error.

     The elements of burglary, as defined in subsection (a)(3), are:  (1) intentionally or knowingly (2) entering a habitation or building (or portion thereof) not then open to the public (3) without the effective consent of the owner, and (4) committing or attempting to commit a felony,

---

[4]  *See, e.g.*, *Day v. State*, 532 S.W.2d 302, 306 (Tex. Crim. App. 1975).

theft, or an assault. Tex. Penal Code Ann. § 30.02(a)(3); *DeVaughn*, 749 S.W.2d at 65. With the exception of the prepositional phrase "without the effective consent of the owner," each element of burglary as defined in (a)(1) and (3)—and (a)(2), for that matter—appear in their respective separate subsections. The court of criminal appeals has appeared to suggest that the legislature's placement of differing alternative statutory components of an offense in separate sections or subsections may signal legislative intent to create separate offenses. *Cf. Huffman*, 2008 Tex. Crim. App. LEXIS 1180, at *14-15 (concluding that legislature "was apparently neutral" about whether defendant intentionally, knowingly, or recklessly caused bodily injury "because all three culpable mental states are listed together in a single phrase within a single subsection of the statute."). On the other hand, the definition of burglary under subsection (a)(3) is substantively identical to that in (a)(1), with a single exception: instead of having to prove specific intent to commit a felony, theft, or assault at the time of entry, the State can prove the defendant, after entry, proceeded to *actually commit or attempt to commit a felony, theft, or assault*. Subsection (a)(3) thus "includes as burglary the conduct of one who enters without effective consent but, lacking intent to commit any crime upon his entry, subsequently forms that intent and commits or attempts to commit a felony or theft. [It] dispenses with the need to prove intent at the time of the entry when the actor is caught in the act." *DeVaughn*, 749 S.W.2d at 65 (quoting Tex. Penal Code Ann. § 30.02, Practice Commentary). We must decide whether the legislature intended, through this single substantive distinction between burglary as defined under subsections (a)(1) versus (a)(3), to create two distinct criminal offenses. Guided by the court of criminal appeals' prior analysis of section 30.02, we conclude it did not.

10

In *DeVaughn*, a case involving the sufficiency of a burglary indictment, the court of criminal appeals characterized the distinction between subsection (a)(1) and (a)(3) as follows:

> the attempted or completed theft or felony required by § 30.02(a)(3), supra, merely supplants the specific intent which accompanies entry in §§ 30.02(a)(1) and (2). . . . *The gravamen of the offense of burglary clearly remains entry of a building or habitation without the effective consent of the owner, accompanied by either the required mental state, under §§ 30.02(a)(1) and (2) . . . or the further requisite acts or omissions, under § 30.02(a)(3).*

*Id*. (emphasis added).[5] Relying on *DeVaughn*, at least two of our sister courts, albeit in unreported opinions, have concluded that subsections (a)(1) and (3) are essentially alternative means of proving a single mens rea element and not separate offenses. *Ramos v. State*, No. 04-05-00543-CR, 2006 Tex. App. LEXIS 5139, at *3-4 (Tex. App.—San Antonio June 14, 2006, pet. ref'd) (mem. op., not designated for publication); *Yates v. State*, No. 05-05-00140-CR, 2005 Tex. App. LEXIS 9468, at *6-9 (Tex. App.—Dallas Nov. 10, 2005, no pet.) (mem. op., not designated for publication). We agree with the essence of their reasoning. Subsection (a)(1)'s specific-intent requirement and subsection (a)(3)'s further-acts requirement function as alternative means of proving what amounts to an aggravating factor that elevates acts constituting trespass to the offense of burglary. At least for purposes of 30.02, the two alternatives, though contained in separate subsections, function as conceptual and moral equivalents. *See Landrian*, 2008 Tex. Crim. App. 1183, at *15-19 (intentional, knowing, and reckless bodily injury assault functioned as equivalents and were not separate crimes). Whether a burglary defendant actually committed or attempted to commit the underlying felony,

---

[5] We also note that the *DeVaughn* court termed the three subsections of (a) as "three distinct ways in which one may commit the offense of burglary." 749 S.W.2d at 64-65.

theft, or assault versus merely intending it when entering may have implications for a defendant's overall criminal liability, but these would stem from other penal provisions rather than anything the legislature intended within section 30.02. We overrule Martinez's second point of error.

Our disposition of Martinez's points of error requires us to vacate one of his two convictions but affirm the other. *Bigon v. State*, 252 S.W.3d 360, 372 (Tex. Crim. App. 2008); *Cavazos*, 203 S.W.3d at 337. The court of criminal appeals has instructed us that when two convictions violate double jeopardy, we must retain the conviction for the "most serious" offense. *Bigon*, 252 S.W.3d at 372; *Cavazos*, 203 S.W.3d at 337. The "most serious" offense is the conviction for which the greatest sentence was assessed. *Bigon*, 252 S.W.3d at 373; *Cavazos*, 203 S.W.3d at 338. In this case, we can discern that the district court assessed forty years' imprisonment as punishment on count I, burglary of a habitation with intent to commit aggravated sexual assault, and twenty years' imprisonment on count II, burglary of a habitation with intent to commit theft. There is no dispute that forty years is greater than twenty years and that burglary of a habitation with intent to commit aggravated sexual assault is therefore the "most serious" offense of conviction.

Martinez, however, urges that we should instead vacate his most serious conviction and retain his less serious offense of conviction to deter the State in the future from over-charging cases and committing "clear" or "obvious" double-jeopardy violations, as he contends occurred here. Counsel asserts that Travis County prosecutors have persistently engaged in such practices and that this sort of prophylactic measure is necessary to provide meaningful protection to defendants' rights to be free of double jeopardy. Martinez insists that his concept finds support in what he terms the

12

"implicit rule of *Landers*," the case in which the court of criminal appeals held that the "most serious" offense concept would govern the remedy for double-jeopardy violations. *See Landers v. State*, 957 S.W.2d 558, 559-61 (Tex. Crim. App. 1997). Specifically, Martinez observes that one of the *Landers* court's policy rationales for adopting the "most serious" offense rule was that "*[b]ecause pursuing both offenses is proper in this context*, the State should have the benefit of the most serious punishment obtained." *Id*. at 560 (emphasis added). Martinez distinguishes *Landers*, which involved two offenses that were "not invariably the 'same offense' for double jeopardy purposes," from the present case, in which he urges "the prosecution . . . sought convictions for what is the same offense as a matter of law." On this basis, Martinez "invokes *Landers*' implicit exception to its remedy: where the prosecution alleges two offenses in one indictment which are the same as a matter of law, the remedy for unconstitutionally-obtained multiple punishments will be to vacate the most serious punishment and conviction."

Even if we could agree that *Landers* (much less its progeny *Bigon* and *Cavazos*) are distinguishable and that the "most serious" offense concept does not govern this case, we would still find no support for the remedy Martinez advocates. Absent further guidance from the court of criminal appeals, we would not be free simply to impose the prophylactic procedural measure Martinez advocates, but would instead look to the remedies for double-jeopardy violations that the court of criminal appeals had applied prior to *Landers*. These included "'[choosing] the offense that the defendant was convicted of first,' 'affirm[ing] the conviction that had the lowest number in the charging instrument,' and '[choosing] the offense that was alleged first in the indictment.'" *Williams v. State*, 240 S.W.3d 293, 300 (Tex. App.—Austin 2007, no pet.) (quoting *Ex parte Pena*,

820 S.W.2d 806, 808 (Tex. Crim. App. 1991) (plurality op.)).  Applying these remedies would lead to the same result as with the "most serious offense" rule—we would retain Martinez's conviction for burglary with intent to commit aggravated sexual assault.  In short, Martinez's arguments regarding the appropriate remedy for the double-jeopardy violation are more appropriately directed to the court of criminal appeals or the legislature rather than this Court.

## CONCLUSION

We vacate the judgment of conviction for burglary of a habitation with intent to commit theft.  We affirm the judgment of conviction for burglary of a habitation with intent to commit aggravated sexual assault.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Puryear and Pemberton

Affirmed in part; Vacated in part

Filed:   November 14, 2008

Publish

14