ACCEPTED
04-15-00265-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/21/2015 2:12:49 PM
KEITH HOTTLE
CLERK

**Nos. 04-15-00265-CR & 04-15-00266-CR**

IN THE FOURTH COURT OF
APPEALS OF TEXAS
SAN ANTONIO, TEXAS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

09/21/15 2:12:49 PM

KEITH E. HOTTLE
Clerk

**ARESTEDE JAMES TREADWAY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

ON APPEAL FROM THE 175th JUDICIAL DISTRICT COURT
OF BEXAR COUNTY, TEXAS
CAUSE NUMBERS 2013-CR-11505 & 2013-CR-11506

**BRIEF FOR THE STATE**

**NICHOLAS "NICO" LAHOOD**
Criminal District Attorney
Bexar County, Texas

**JENNA REBLIN**
Assistant Criminal District Attorney
Bexar County, Texas
**MARY BETH WELSH**
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 W. Nueva, 7TH Floor
San Antonio, Texas 78205
mwelsh@bexar.org
(210) 335-2782
(210) 335-2436 (fax)
State Bar No. 00785215
(On Appeal)

**ORAL ARGUMENT WAIVED**

# TABLE OF CONTENTS

**PAGE(S)**

## Table of Contents

TABLE OF AUTHORITIES..................................................................................iii

BRIEF FOR THE STATE................................................................................ 1

RULE 38.2(a)(1)(B) STATEMENT .................................................................. 2

STATE'S RESPONSE TO APPELLANT'S
  FIRST AND SECOND POINTS OF ERROR ....................................................2
    Because there was evidence that appellant entered the Smagacz's
    home without consent and committed aggravated assault and
    committed or attempted to commit theft, the evidence was legally
    sufficient to sustain a conviction for burglary in each cause number.

STANDARD OF REVIEW ................................................................................2
    SUMMARY OF THE EVIDENCE ......................................................... 4

ARGUMENT AND AUTHORITIES........................................................................11

APPLICATION ................................................................................................13

STATE'S RESPONSE TO APPELLANT'S
  THIRD POINT OF ERROR .............................................................................16
    Under the facts of this case and the charging instruments both convictions
    for burglary arose under a single unlawful entry; therefore, appellant's right
    to be free from being punished twice for the same offense was violated. The
    lesser offense of burglary by entering and committing or attempting to
    commit theft should be vacated.

CONCLUSION ................................................................................................19

CERTIFICATE OF SERVICE .............................................................................20

i

CERTIFICATE OF COMPLIANCE................................................................20

# Table of Authorities

**Federal Cases**                                                                                       **Page(s)**

*Jackson v. Virginia*, 443 U.S. 307 (1979)......................................................................3, 15
*North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled on other grounds by*
*Alabama v. Smith*, 490 U.S. 794 (1989) ................................................................17
*Tibbs v. Florida*, 457 U.S. 31(1982)........................................................................4

**Texas Cases**

*Beardsley v. State*, 738 S.W.2d 681 (Tex. Crim. App. 1987) (en banc) .................12
*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) .........................................3
*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)............................ 3, 4, 15
*Davis v. State*, 313 S.W.3d 317 (Tex. Crim. App. 2010) .........................................17
*DeVaughn v. State*, 749 S.W.2d 62 (Tex. Crim. App. 1988) ...................................12
*Espinoza v. State*, 955 S.W.2d 108 (Tex. App. — Waco 1997, pet. ref'd) .............12
*Ex parte Cavazos*, 203 S.W.3d 333 (Tex. Crim. App. 2006) ........................... 17, 18
*Flores v. State*, 902 S.W.2d 618 (Tex. App. — Austin 1995, pet. ref'd)................12
*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007) ...........................................4
*King v. State*, 29 S.W.3d 556 (Tex. Crim. App. 2000)...............................................3
*Landers v. State*, 957 S.W.2d 558 (Tex. Crim. App. 1997) ....................................18
*Lopez v. State*, 108 S.W.3d 293 (Tex. Crim. App. 2003).........................................17
*Manrique v. State*, 994 S.W.2d 640 (Tex. Crim. App. 1999) (en banc)..................13
*Martinez v. State*, 269 S.W.3d 777 (Tex. App.—Austin 2008, no pet.)..................17
*Matamoros v. State*, 901 S.W.2d 470 (Tex. Crim. App. 1995) ..................................3
*McFarland v. State*, 928 S.W.2d 482 (Tex. Crim. App. 1996) ...........................3, 15
*Moreno v. State*, 755 S.W.2d 866 (Tex. Crim. App. 1988)........................................3
*Roberson v. State*, 16 S.W.3d 156 (Tex. App. — Austin 2000, pet. ref'd).............12
*Sonnier v. State*, 913 S.W.2d 511 (Tex. Crim. App. 1995) .......................................3
*Williams v. State*, 235 S.W.3d 742 (Tex. Crim. App. 2007) .....................................4
*Williams v. State*, 937 S.W.2d 479 (Tex. Crim. App. 1996) .....................................3

**Statutes**
Pen. Code §31.03(a) (West 2015)...................................................................... 13, 16
Tex. Pen. Code § 22.01(a)(1), (2) (West 2015) .......................................................13
Tex. Pen. Code § 22.02(a)(2) (West 2015)......................................................... 13, 16
Tex. Pen. Code § 30.02 (West 2015).........................................................................12
Tex. Pen. Code § 30.02(a)(1)-(3) (West 2015)........................................................17
Tex. Pen. Code § 30.02(a)(3) (West 2015)......................................................... 12, 16

Tex. Pen. Code §30.02(c) (West 2015) ....................................................18
Tex. Pen. Code §30.02(d) (West 2015) ...................................................18

**Rules**

TEX. R. APP. P. 38.2(a)(1)(B) ...............................................................2

**Constitutional Provisions**

U.S. CONST. amend. V..........................................................................16

| Arestede James Treadway, | § | In the Fourth Court |
|---|---|---|
| Appellant | § | |
| v. | § | Of Appeals |
| The State of Texas | § | |
| Appellee | § | San Antonio, Texas |

**BRIEF FOR THE STATE**

**TO THE HONORABLE COURT OF APPEALS:**

Now comes, Nicholas "Nico" LaHood, Criminal District Attorney of Bexar County, Texas, and files this brief for the State. Appellant, Arestede James Treadway, was charged as a habitual by a two count indictment for the offenses of burglary of a habitation and aggravated assault with a deadly weapon, cause number 2013-CR-11505 (C.R. 1150 at 5,6). Appellant was also charged as a habitual by indictment with the offense of burglary of a habitation, cause number 2013-CR-11506 (C.R. 11506 at 7, 8). Both cases were tried before the court in the 175th Judicial District Court of Bexar County, Texas, the Honorable, Mary Ramon, judge presiding. Appellant was found guilty of entering a habitation and then committing or attempting to commit aggravated assault as indicted in Count I, paragraph B in cause number 2013-CR-11505 and entering a habitation and committing or attempting to commit theft as indicted in Count I, paragraph B in

1

cause number 2013-CR-11506. Under both causes the enhancement paragraphs were found to be true (C.R. 11505 at 19 & 110506 at 20). Punishment was assessed at 25 years confinement in both causes to run concurrently. The Trial Court's Certification of Defendant's Right of Appeal was filed indicating this was not a plea bargain and appellant has the right to appeal (C.R. 11505 at 18 & 11505 at 19). Appellant filed notice of appeal (C.R. 11505 at 21 & 11506 at 19).

## RULE 38.2(a)(1)(B) STATEMENT

The State challenges the factual assertions contained in appellant's brief pursuant to Rule 38.2(a)(1)(B) of the Texas Rules of Appellate Procedure. The State will provide its quotations of evidence and/or summary of evidence adduced from the record in its response contained herein.

## STATE'S RESPONSE TO APPELLANT
## FIRST AND SECOND POINTS OF ERROR

In two points of error appellant contends that the evidence is legally insufficiency to find appellant intentionally or knowingly entered a habitation and attempted to commit and committed aggravated assault and to support a finding that appellant intentionally or knowingly entered a habitation and attempted to commit and committed theft (Appellant's brief at 12)

## STANDARD OF REVIEW

On a challenge of the legal sufficiency of the evidence, the reviewing court must review all the evidence, whether direct or circumstantial, in the light most

favorable to the verdict and determine whether any rational trier of fact could have found all the essential elements of the offense, and/or the challenged finding, beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

Under the legal sufficiency standard, the jury is the exclusive judge of the credibility of the witnesses, the weight to be given their testimony and may choose to believe all, some, or none of their testimony or other evidence presented. *See McFarland v. State*, 928 S.W.2d 482, 496 (Tex. Crim. App. 1996); *Sonnier v. State*, 913 S.W.2d 511, 514 (Tex. Crim. App. 1995). An appellate court presumes that the factfinder resolved any conflicting inferences in favor of the verdict and defers to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The reviewing court's duty is not to reweigh the evidence from reading a cold record but to "position itself as a final, due process safeguard ensuring only the rationality of the factfinder." *Williams v. State*, 937 S.W.2d 479, 483 (Tex. Crim. App. 1996); *Matamoros v. State*, 901 S.W.2d 470, 474 (Tex. Crim. App. 1995); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence

when viewed in the light most favorable to the verdict. *See Clayton*, 235 S.W.3d at 778 (*citing Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). An appellate court also defers to the factfinder's evaluation of the credibility of the evidence and weight to give the evidence. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *See Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

Because appellant has raised a sufficiency issue, a brief summary of the evidence will be helpful and is provided below.

### SUMMARY OF THE EVIDENCE

*State's Case*

Sean Smagacz owns his own construction company that specializes in excavation work (R.R.2 at 21). Smagacz has known appellant for about four years, during which time Smagacz hired him to do shovel work (R.R.2 at 23, 24). Occasionally they saw each other outside of work to play basketball and Mr. Smagacz considered him to be a friend (R.R.2 at 24).

On this particular weekend they were working on a job cite with another hired worker, Wilson Brown (R.R.2 at 25). They all met at Smagacz's house after work and then Brown left for Floresville to pick up his son. Appellant left his keys in Brown's truck so he was stuck at Smagacz's house (R.R.2 at 25). Smagacz lived

with his girlfriend but she was not at home so he allowed appellant to stay at his house for the night and they ate pizza and watched T.V. (R.R.2 at 25, 26). Appellant also stayed Saturday night (R.R.2 at 26). Sunday they went to play basketball because Smagacz wasn't feeling well and thought maybe he could sweat it out (R.R.2 at 27). When Smagacz and appellant were playing basketball, appellant stopped and claimed that a man who was walking up and down the street was there to spy on him (R.R.2 at 27). Smagacz thought this was very unusual and told him the guy was not spying on him, he was just exercising and they kept playing basketball (R.R.2 at 28). Then appellant started acting as if they were in jail and threatened to shank Smagacz (R.R.2 at 29). Appellant got in Smagacz's face like he wanted to fight, which was very strange behavior (R.R.2 at 29). Appellant seemed to be delusional (R.R.2 at 29).

After basketball they ordered pizza and then Smagacz just laid on the couch watching T.V. while appellant was outside, supposedly working on his truck (R.R.2 at 29). After about three hours, Wilson called for them to come and pick up appellant's keys (R.R.2 at 29, 30). Appellant said he wasn't going, which Smagacz thought was real strange since they were his keys (R.R.2 at 30). Smagacz was a little upset with appellant for not wanting to because the keys were his so Smagacz shut the garage door and told appellant to have to wait outside while he went to get

5

the keys (R.R.2 at 30). Smagacz shut the garage door and set the alarm (R.R.2 at 31).

Smagacz met Wilson's wife or girlfriend about half way from where Wilson lived so he was gone about 15 minutes (R.R.2 at 32). When Smagacz returned he did not see appellant anywhere and his truck was in the driveway (R.R.2 at 32). Smagacz opened the garage door and went into the house through the laundry room where he found appellant standing on top of the washer and dryer going through the cabinets and the alarm was blaring (R.R.2 at 33). There was nothing in the laundry room that belonged to appellant, in fact, there was nothing in the house at all that belonged to him (R.R.2 at 33). Smagacz confronted appellant about breaking into his house which appellant denied. However, Smagacz continued to say that appellant broke into his house because the alarm was blaring and appellant had Smagacz's 9-millimeter pistol with its gun case in the back of his pants (R.R.2 at 34). The gun is usually in the computer desk drawer (R.R.2 at 35).

When Smagacz noticed the weapon, appellant pulled it out and pointed it at Smagacz which made Smagacz feel very uncomfortable, scared and threatened (R.R.2 at 35). As Smagacz began back stepping towards his bedroom where he knew he had a rifle, appellant told him not to move and to put his hands up (R.R.2 at 36). Appellant asked Smagacz for money but Smagacz told him he did not have any and then appellant punched Smagacz in the face on the left eye (R.R.2 at 37).

6

Smagacz asked why he was doing this and appellant punched him again (R.R.2 at 37). Appellant then hit Smagacz in the back of the head with the butt of the pistol and yelled at him to give him money (R.R.2 at 38). Smagacz refused and then heard a gunshot (R.R.2 at 38). Appellant was about four feet away from Smagacz and he was acting delusional and pissed off (R.R.2 at 38). Appellant was not acting like himself and his eyes looked funny (R.R.2 at 39). Smagacz heard another click of the gun but it did not go off (R.R.2 at 39). Smagacz was not hit but appellant had the gun pointed at him (R.R.2 at 39).

Smagacz, fearing for his life, kicked the gun out of appellant's hand and it fell either on the floor or the bed (R.R.2 at 40). The two wrestled for a minute and then Smagacz grabbed the gun and ran out of the room (R.R.2 at 40). Smagacz ran out of the house through the garage and yelled at neighbors to call the police because someone broke into his home and tried kill him (R.R.2 at 41).

When Smagacz returned to his home, the rifle that had been in his bedroom was gone (R.R.2 at 41). Smagacz discovered that the backdoor to the house from the patio, which was shut and locked when he left that day, was broken and open (R.R.2 at 43).

After this incident, appellant attempted to contact Smagacz by calling and he sent him a letter (R.R.2 at 44). Appellant indicated to Smagacz where the rifle might be in that letter and through text messages (R.R.2 at 67).

Officer Woodard was on patrol when he received a call for a burglary alarm (R.R.2 at 74, 75). Woodard received a second call for a burglary in progress and when he arrived on the scene he was waived down by Shaun Smagacz who was in the cul-de-sac (R.R.2 at 76). Mr. Smagacz gave the police permission to search his home, which they did (R.R.2 at 76). They collected a 9-millimeter handgun and a 9-millimeter shell casing (R.R.2 at 77). Inside the back door looked like it had been forced open because the frame was broken (R.R.2 at 77).

*Defendant's Case*

Appellant denied attempting to gain entry into Smagacz's home or that he had any intent to steal or commit any other felony (R.R.3 at 7).

During cross examination appellant admitted to his extensive criminal history which includes convictions for robbery, burglary by force with intent to commit theft, possession of LSD under 28 grams, and convicted felon in possession of a firearm and possession of an unregistered firearm (R.R.3 at 8). Appellant admitted to being at Smagacz's home (R.R.3 at 8). Appellant denied that his keys were in Mr. Wilson's truck (R.R.3 at 9). Appellant admitted that he triggered the alarm (R.R.3 at 9). Appellant believed that the backdoor was broken when he ran from the house after their altercation (R.R.3 at 10). Appellant admitted to running from the house but denied taking the rifle or demanding money other than what was owed to him for his work (R.R.3 at 10). Appellant

8

admitted to talking to the police and telling them he did not remember anything because he does not cooperate with authorities (R.R.3 at 10). Appellant did tell them that he was on drugs that day (R.R.3 at 11).

Appellant admitted being in the laundry room changing his clothes from the washer to the dryer but denied standing on the dryer (R.R.3 at 13). According to appellant Smagacz pushed him against the washer (R.R.3 at 13). Appellant stated that he called the police but he did not tell the police that he had called 911 (R.R.3 at 14). According to appellant he fled the scene because Smagacz had the gun and was shooting at him (R.R.3 at 14, 15).

Appellant admitted to writing the letter to Smagacz and says he wrote it because he wanted his keys, phone, wallet and personal effects back (R.R.3 at 16). The only things appellant intended to take from the house were his personal belongings (R.R.3 at 16). Both he and Smagacz left the house at the same time (R.R.3 at 19). Smagacz went to get appellant's keys from Wilson, who appellant previously testified did not have his keys (R.R.3 at 19). Appellant went to the Valero to buy cigarettes (R.R.3 at 19). Then appellant stated that Smagacz told him Wilson had his keys when Smagacz had them the whole time (R.R.3 at 19).

On redirect appellant stated that he has known Smagacz for about five years and had worked for him on and off for a couple of years (R.R.3 at 20). According to appellant he had been at the house since Wednesday and he was often there on

9

weekends when Smagacz's wife was gone (R.R.3 at 20). Appellant stated that he broke the back door when he pulled on it from the inside as he was running from the scene (R.R.3 at 21). The time when appellant had delusions of someone spying on him was not that night but several visits prior to that weekend (R.R.3 at 24).

When Smagacz went to get the keys from Wilson he did not want appellant to go with him and he wanted appellant to stay outside in his truck (R.R.3 at 27). When Smagacz left, appellant walked to Valero to get cigarettes and meet a female that Smagacz did not want at his house (R.R.3 at 27). Smagacz passed him on the road and then passed him again returning home, too soon to have met Wilson to get the keys (R.R.3 at 27). When appellant got back to the house Smagacz was inside (R.R.3 at 27). He came out and appellant walked into the garage an asked if he had gotten the keys (R.R.3 at 27). Smagacz said he didn't, then appellant asked if the wash cycle was done (R.R.3 at 27). Smagacz walked passed appellant to appellant's truck and threw something across the seat which turned out to be some clothes (R.R.3 at 28). Appellant went back inside to get the clothes in the washer and that was when the alarm was triggered (R.R.3 at 29). Smagacz pushed appellant against the washer (R.R.3 at 29).

The first time appellant saw the gun was when Smagacz grabbed it off the counter (R.R.3 at 30). Appellant hit Smagaz in the chest after he pushed him and

then in the face after he grabbed the gun (R.R.3 at 30). They tussled for the gun and Smagacz hit his head on the cabinet door that was open (R.R.3 at 30). Appellant stated that he did not shoot or attempt to shoot Smagacz (R.R.3 at 30). Appellant never pointed the gun at Smagacz; he never had control of the gun (R.R.3 at 31). Smagacz pointed the gun at him and attempted to fire the weapon at him but appellant believes the gun misfired when they were fighting over it and the magazine fell out on the bed (R.R.3 at 31). Smagacz was never on his knees with appellant over him (R.R.3 at 31). The only money appellant wanted was his paycheck (R.R.3 at 32). They had all been doing drugs, Ice and Xanax, including Wilson (R.R.3 at 32).

## ARGUMENT AND AUTHORITIES

At the conclusion of evidence in a bench trial, appellant was found guilty by the trial court of burglary in cause number 2013-CR-11505 as charged Count I, paragraph B which alleged that "on or about the 14th Day of April, 2013, Arestede James Treadway did intentionally and knowingly enter a habitation, and therein attempted to commit and committed the felony offense of aggravated assault, without the effective consent of Shawn Smagacz, the owner" (C.R. 11505 at 5).

The trial court further found appellant guilty of burglary in cause number 2013-CR-11506 as charged in Count I, paragraph B which alleged that "on or about the 14th Day of April, 2013, Arestede James Treadway, did intentionally and

11

knowingly enter a habitation, and therein attempted to commit and committed theft, without the effective consent of Shawn Smagacz, the owner" (C.R. 11506 at 7).

Section 30.02 of the penal code defines the offense of burglary. *See* Tex. Pen. Code § 30.02 (West 2015). A person commits the offense of burglary of a habitation "if, without the effective consent of the owner, the person enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." Tex. Pen. Code § 30.02(a)(3) (West 2015).

When an accused is charged under § 30.02(a)(3) of the Penal Code, the State need only show that the defendant intentionally or knowingly entered a habitation without the owner's consent and attempted to commit a felony, theft, or assault. *DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988); *Espinoza v. State*, 955 S.W.2d 108, 111 (Tex. App. — Waco 1997, pet. ref'd); *Flores v. State*, 902 S.W.2d 618 (Tex. App. — Austin 1995, pet. ref'd). A criminal offense may be proved by circumstantial evidence. *Roberson v. State*, 16 S.W.3d 156, 164 (Tex. App. — Austin 2000, pet. ref'd). It is not necessary that each bit of circumstantial evidence by itself directly and independently prove guilt; instead, what is needed is that the cumulative force of all the circumstances establishes guilt. *Beardsley v. State*, 738 S.W.2d 681, 685 (Tex. Crim. App. 1987) (en banc). A jury may infer intent from any facts which tend to prove its existence, including the method of

12

committing the crime. *See Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (en banc).

A person commits an assault if he "intentionally or knowingly threatens another with imminent bodily injury" or "intentionally, knowingly or recklessly causes bodily injury to another." Tex. Pen. Code § 22.01(a)(1), (2) (West 2015). If the person "uses or exhibits a deadly weapon" in committing the assault, it is an aggravated assault. Tex. Pen. Code § 22.02(a)(2) (West 2015). A person commits a theft if "he unlawfully appropriates property with intent to deprive the owner of property." Tex. Pen. Code § 31.03(a) (West 2015).

## APPLICATION

Under the two indictments the State was required to prove that appellant entered the habitation of Shawn Smagacz without his consent and once in the home appellant attempted to commit or committed the felony offense of aggravated assault and theft to support convictions under both indictments.

*Entering the habitation without consent*

Although appellant testified that Smagacz was in the house when he returned from the Valero and that he went in the only to retrieve his things, Mr. Smagacz testified that appellant had been a guest at his house over the weekend, however, when Smagacz left to get appellant's keys from Mr. Wilson he set the alarm, locked the doors and told appellant to stay outside. When Smagacz returned he

13

went inside to find the alarm blaring and appellant rummaging through the cabinets in the laundry room. Mr. Smagacz testified that he did not give appellant permission to be in the house, in fact, he specifically told him to stay outside. Further, the back door had been forcefully opened from the outside. It appeared to have been pried open. Appellant admitted to breaking the door but said it was when he pulled on it to get out of the house as he ran from the scene.

*Aggravated Assault*

Appellant denied hitting or shooting at Mr. Smagacz. According Smagacz when he found appellant in the laundry room, appellant had Mr. Smagacz's pistol that was kept in a desk drawer in his waist band. When confronted by Smagacz, appellant pulled out the pistol, pointed it at Smagacz demanding money. When Smagacz refused appellant punched him in the face twice and then hit him in the back of the head with the butt of the pistol while demanding money. When Smagacz continued refusing to give appellant money, appellant fired the pistol at Smagacz, fortunately missing. Smagacz suffered injuries to the left eye and the back of his head.

*Theft*

Mr. Smagacz found appellant rummaging through the cabinets and in possession of Smagacz 9-millimeter pistol. Appellant demanded money from Smagacz. A rifle that had been in Smagacz's bedroom was missing. Appellant

14

testified that he never had possession of the pistol and the only money he wanted was his paycheck.

Despite the conflicts in testimony, evidence demonstrates that 1) the alarm was activated and the backdoor was open and broken, 2) appellant was discovered inside the home rummaging through cabinets and in possession of Smagacz's firearm, 3) appellant had not been invited into the home, 4) appellant demanded money appellant, 5) used drugs and was using that day, 6), appellant struck Smagacz, pointed a firearm at him and shot at him, 7) appellant had previously been convicted of robbery, burglary by force with intent to commit theft, possession of LSD under 28 grams, convicted felon in possession of a firearm, and possession of an unregistered firearm.

The factfinder, in this case the judge, is the exclusive judge of the credibility of the witnesses, the weight to be given their testimony and may choose to believe all, some, or none of their testimony or other evidence presented. *McFarland*, 928 S.W.2d at 496. The presumption is the factfinder resolved any conflicting inferences in favor of the verdict and there should be deference to that resolution. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The evidence was legally sufficient to prove that appellant entered the home without consent. While in the home appellant intentionally or knowingly threatened Smagacz with imminent bodily injury by pointing a firearm at Smagacz

15

and firing the firearm. *See* Tex. Pen. Code §22.02(a)(2) (West 2015). Further, the evidence was legally sufficient to prove that appellant attempted to commit or committed theft. *See* Pen. Code §31.03(a) (West 2015). Therefore, the evidence was legally sufficient to show that appellant entered the home of Smagacz without consent and committed felony and committed or attempted to commit theft. *See* Tex. Pen. Code § 30.02(a)(3) (West 2015).

Appellant's first point of error lacks merit and should be overruled.

## STATE'S RESPONSE TO APPELLANT'S THIRD POINT OF ERROR

In appellant's third point of error, he contends that his right to be free from double jeopardy was violated when he was convicted twice for burglary of a habitation, arising from the same entry. (Appellant's brief at 18). Counsel for the State agrees under these facts and the charging instruments.

The Fifth Amendment provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . .." U.S. CONST. amend. V. The United States Supreme Court has concluded that the Fifth Amendment offers three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794

(1989); *Lopez v. State*, 108 S.W.3d 293, 295- 96 (Tex. Crim. App. 2003). The instant case, as appellant correctly claims, implicates the third of these guarantees, protection against multiple punishments for the same offense.

The Court of Criminal Appeals has found that, when a burglary is committed, the harm results from the entry itself. *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). Therefore, the gravamen of a burglary is the entry without the effective consent of the owner, so the existence multiple underlying offenses connected with the entry, does not convert a single unlawful entry into multiple burglaries. *Davis v. State*, 313 S.W.3d 317, 342 (Tex. Crim. App. 2010).

Burglary of a habitation may be committed three different ways, by (1) entering habitation with intent to commit felony, theft, or assault; (2) remaining concealed in habitation with intent to commit felony, theft, or assault; or (3) entering habitation and then committing or attempting to commit felony, theft, or assault). *See* Tex. Pen. Code § 30.02(a)(1)-(3) (West 2015). These different ways are not separate burglary offenses; they are alternative means of committing the single offense of burglary. *Martinez v. State*, 269 S.W.3d 777, 782 (Tex. App.—Austin 2008, no pet.).

Appellant was found guilty of entering the home of Smagacz without his consent and committing or attempting to commit a felony; namely: aggravated

17

assault, and theft, which are different theories of prosecution for one burglary, not separate offenses. Appellant was sentenced to 25 years in each case; therefore he was punished twice for the same burglary violating appellant's right to be free from double jeopardy.

When a defendant is convicted of two offenses that are the "same" for double-jeopardy purposes, our case law tells us that the conviction for the "most serious" offense is retained and the other conviction is set aside. *Cavazos*, 203 S.W.3d at 337; *Landers v. State*, 957 S.W.2d 558, 559-60 (Tex. Crim. App. 1997). Burglary of habitation by attempting to commit or committing a felony offense is a first degree. Tex. Pen. Code §30.02(d) (West 2015). Burglary of a habitation by attempting to commit or committing theft is a second degree felony. Tex. Pen. Code §30.02(c) (West 2015).

Therefore, the State asks this Court to vacate the lesser offense under cause number 2013-CR- 11506 and affirm the conviction pursuant to cause number 2013-CR11505.

**Conclusion**

WHEREFORE, PREMISES CONSIDERED, the State submits that the case under cause number 2013-CR-11506 should be vacated and the case under cause number 2013-CR11505 should in all things be affirmed.

.                                        Respectfully submitted,

Nicholas "Nico" LaHood
Criminal District Attorney
Bexar County, Texas



 JENNA REBLIN
Assistant Criminal District Attorney
Bexar County, Texas



 /s/*Mary Beth Welsh*_____
MARY BETH WELSH
Assistant Criminal District Attorney
Bexar County, Texas
Paul Elizondo Tower
101 W. Nueva, 7th Fl.
San Antonio, Texas 78205
mwelsh@bexar.org
(210) 335-2782
(210) 335-2436 (fax)
State Bar No. 00785215
(On Appeal)

Attorneys for the State

**Certificate of Service**

I, MARY BETH WELSH, Assistant Criminal District Attorney, Bexar County, Texas, hereby certify that a true file stamped copy of the above and foregoing State's Brief was emailed to Michael D. Robbins, Attorney for Appellant, mrobbins@bexar.org.

_/s/Mary Beth Welsh_____
MARY BETH WELSH

**Certificate of Compliance**

Pursuant to rule 9.4(i)(1)&(i)(2) of the Texas Rules of Appellate Procedure, I, Mary Beth Welsh, Assistant Criminal District Attorney, Bexar County, Texas, certify that this foregoing brief contains 4,007 words from the State's Response to Appellant's First and Second Points of Error until, but excluding, the signature block.

_/s/Mary Beth Welsh_____
MARY BETH WELSH